## NORTHERN INS. CO. OF NEW YORK v. MOLLOY.

### No. 3754.

Court of Civil Appeals of Texas. Beaumont.
Dec. 19, 1940.

Rehearing Denied Dec. 31, 1940.

J. R. Anderson, of Center, and Thompson, Knight, Harris, Wright & Weisberg, of Dallas, for appellant.

Sanders & McLeroy, of Center, for appellee.

WALKER, Chief Justice.

On the 30th day of July, 1939, certain household goods, etc., belonging to appellee, R. F. Molloy, situated in his home in the town of Timpson, Shelby County, and covered by a policy of fire insurance in the amount of $1,250, issued to appellee by appellant, Northern Insurance Company of New York, were destroyed by a fire, which also destroyed appellee's home. This suit was by appellee against appellant for judgment for the loss sustained by him in the fire. Appellant concedes that appellee's petition "sufficiently pleaded that the alleged loss by fire sustained by the plaintiff was not within any excepted liability of the defendant." Answering the questions which submitted the controlling issues plead by both appellant and appellee, the jury found the following facts: On the 20th day of July, 1939, appellee's home was destroyed by fire, which also destroyed the "personal property" covered by the insurance policy in evidence. The "actual cash value" of appellee's "personal property" situated in his house, and covered by the insurance policy in evidence, was $1,500. The jury did not "believe from a prepon-

derance of the evidence" that appellee "procured the burning of the insured property", nor that his wife, Mrs. R. F. Molloy, "procured the burning of the insured property." On the verdict, judgment was rendered for appellee against appellant for the sum of $1,250 with interest at six per cent per annum from the 6th day of January, 1940, and costs of suit, from which appellant has prosecuted its appeal to this court.

We overrule the contention that the finding by the jury that appellee and his wife did not procure the burning of the property was against "the overwhelming preponderance of the evidence." At the time of the fire, appellee was confined in the reformatory at El Reno, Oklahoma, where he had been continuously from February 27, 1939, and Mrs. Molloy was visiting her sister in Henderson, Texas. There was no evidence connecting Mr. and Mrs. Molloy with the origin of the fire. On the undisputed evidence, the court could have instructed a verdict in their favor on that issue. As sustaining their contention, we give appellant's summary of the evidence on that issue:

"(1) The fire was of incendiary origin;

"(2) The assured was convicted of an offense involving fraudulent practice and confined in the United States Reformatory, where he received visits from his wife, the last being in June, and the fire occurring in July;

"(3) Shortly before the fire the assured's wife left the premises which burned, leaving behind a son-in-law who customarily resided with her and whom she regarded as her own son;

"(4) The son-in-law stayed in the house until the night before the night of the fire, and then left to stay with his wife's uncle;

"(5) On the night before the fire the son-in-law placed approximately three gallons of gasoline in open containers in the premises which burned;

"(6) Shortly before the fire the son-in-law requested permission of a local farmer to store some property on the latter's farm;

"(7) After such conversation and before the fire, furniture was, in fact, placed in a barn on the farm and then mysteriously taken away;

"(8) An original insurance policy sent the assured's wife for a lesser sum than the one sued upon was rejected by her;

"(9) The assured's wife turned black and fainted immediately upon being told by her son-in-law that a fire had occurred;

"(10) The assured's testimony was not offered to the jury by deposition;

"(11) The testimony of the son-in-law was not offered; and

"(12) The only substantial denial came from the assured's wife, who stated that she did not burn the premises, which were in Timpson, Texas, because at the time of the fire she was in Henderson, Texas."

The evidence did not show as a matter of law that the fire was of incendiary origin. That appellee was in confinement in the reformatory, that his wife visited him a short while before the house was burned, that his son-in-law stayed in the house while Mrs. Molloy was gone, that the son-in-law placed three gallons of gasoline in the house, that he requested a farmer for permission to store some property on his premises—the circumstances brought forward by appellant do not constitute a scintilla of evidence connecting Mr. and Mrs. Molloy with the fire.

We overrule the proposition that appellee offered "no evidence" on the issue of the "actual cash value" of the property destroyed in the fire. On that issue Mrs. Molloy gave the following testimony:

"Q. I will ask you to state whether or not that—is that the list you prepared? A. This is the list that I prepared right here.

"Q. Now you have various and sundry items on there and the value. Are you acquainted with the reasonable market value? A. Yes.

"Q. Were you acquainted with the reasonable market value of these articles on the 20th day of July, 1939, at Timpson, Shelby County, Texas? A. Yes.

"Q. Reasonable market value, Mrs. Molloy, is the value that an article might have in the market when one person wants to sell but does not have to sell and the other person wants to buy but does not have to buy? A. It is true.

"Q. Without asking each article, or about each article, the amounts that you set out in that statement there that you have in your hand, state whether or not you can say that they do represent the reasonable market value of those articles at the time of the fire? A. Yes.

"Q. And were each one of these respectively, worth the amount that is set opposite their name shown in that list there? A. Yes, sir.

"Q. Do you recall—can you state what the aggregate, that is, the total value of all the articles that were destroyed by fire was that you set out in your statement? A. Yes, sir.

"Q. How much was it Mrs. Molloy? A. About $1900.00 and some odd dollars.

"Q. It says here $1,947.70? A. Well, I knew it was around that.

"Q. All right; I will ask you to state whether or not that is approximately correct? A. Yes.

"Q. These items that you set out, these articles, are they articles that were covered by the policy of insurance at the time they were lost? A. Yes.

"Q. And you show a total down here, value of all the property that was destroyed of fourteen—I mean $1947.70. Would you say that represented or that that is the reasonable market value of those items? A. Yes.

"Q. That is the value at the time of the fire? A. At the time of the fire."

As against appellant's proposition, it would serve no useful purpose to summarize her testimony on cross-examination. Her direct testimony raised the issue of "actual cash value", and appellant has no proposition that the jury's finding on that issue was against the "overwhelming weight and preponderance of the testimony."

Appellant's liability under said policy was limited by the following stipulation: "This company shall not be liable beyond the actual cash value of the property at the time of the loss with proper deductions for depreciation, however caused."

The court submitted the issue of "actual cash value" by the following question and explanatory definition:

"What amount, if any, do you find from a preponderance of the evidence was the actual cash value, if any, at the time and place in question of plaintiff's personal property, if any, situated in said house and covered by the insurance policy in evidence, if any, and that was destroyed by said fire. Answer by stating in dollars and cents the amount, if any, you find.

"In connection with Special Issue No. 3 you are instructed that by the term 'actual cash value', as used therein, is meant the amount of cash, if any, into which the property could have been converted at the time and place in question, the usual selling price at the place where the property was situated and at the time inquired about."

Against the court's definition of "actual cash value", appellant advances the following proposition: "Defining actual cash value as 'the amount of cash into which property can be converted' and as 'the usual selling price' constitutes reversible error."

The proposition is predicated on the following exceptions reserved by appellant to the definition of "actual cash value": "Defendant objects and excepts to Special Issue No. 3 because there is no proper definition of the legal phrase 'actual cash value'. The defendant objects and excepts to the definition given of 'actual cash value' because the same is an inadequate and improper definition and merely defines the term in words of synonymous legal meaning; defendant further objects and excepts because said definition is in effect nothing more than a general charge * * *; defendant further objects and excepts to the definition because the same furnishes the jury no legal guide but on the contrary is confusing prejudicial, contradictory, because the jury under the definition as given could disregard the true meaning of actual cash value and find a value in utter disregard of the necessities of the transaction and could even be permitted to consider value on terms other than cash."

On authority of Isbell v. Lennox, 116 Tex. 522, 295 S.W. 920, these exceptions were too general to point out to the trial court the defects in the definition now urged by appellant. This point is illustrated by appellant's restatement of its exceptions in the following assignment of error from its amended motion for new trial:

"The court erred in overruling and failing to sustain this defendant's objection and exception to the court's charge as set out in paragraph 4 of the written objections and exceptions, said objection complaining of the definition contained in the charge 'actual cash value.' The true definition of the term 'actual cash value' is that price arrived at as between a seller who desires but is not compelled to sell, and a buyer who desires but is not compelled to buy, whereas the court's definition

as given tells the jury that the term is 'the usual selling price,' said definition being meaningless and permitting the jury to speculate as to whether such usual selling price is a price for cash or upon a credit. The court's charge further is erroneous in telling the jury that the term means the amount of cash into which the property could have been converted, said charge being erroneous in permitting the jury to find a value which a buyer would give, regardless of whether he was compelled to buy or not."

The exception that the definition was "inadequate and improper" directs the court's attention to no error. Clearly the definition was not a "general charge". The exception that the definition furnished "the jury no legal guide * * * was confusing, prejudicial", etc., does not point out to the court wherein it was subject to these exceptions. The definition did not permit the jury "to consider value on terms other than cash." We are not to be understood as approving the definition; our holding is limited to the point that it was not subject to appellant's exceptions.

■ Appellee's counsel made the following argument to the jury: "If you believe that, gentlemen, you answer these 'yes'; (Counsel here refers to issues requesting the jury to find if the insured or his wife procured the burning of the house in question) if you don't, and I don't see how you could from the evidence in this case, that is, you are to try this case, from the evidence that they have presented to you, the burden that was imposed upon them under these issues they have got to satisfy our mind by a preponderance of the evidence. If they don't do that, gentlemen, answer it otherwise."

This argument was not erroneous on appellant's exception that it amounted "to an improper charge on the burden of proof." The argument correctly stated the law of burden of proof submitting the issues charging appellee and his wife with burning the house.

■ It was appellant's theory that Joel Murphy, appellee's son-in-law, burned the house. The court permitted one of the witnesses to testify that Murphy the night before the fire had purchased three gallons of gasoline; that he said he bought it for the purpose of removing paint from a pair of his work pants. Appellee's point against the admission of this evidence is

immaterial for the reason, as stated above, that there was not a scintilla of evidence connecting appellee and his wife with the burning of the property.

■ After the introduction of the evidence had been closed, counsel for appellee stated in the presence of the jury: "Before we conclude, if the court please, the witness Joel Murphy is in the courtroom under the rule and has been under the rule during the day, and we tender that witness to defendant in this case if they want to use him."

Objecting to that statement, the court made the following ruling: "Gentlemen of the Jury: You will not consider the statement of counsel. I refer to Mr. McLeroy about Joel Murphy being here under the rule * * *. You will not consider it. Motion for new trial is overruled * * *."

If the statement by appellee's counsel was error, and if error, was made harmless by the court's ruling, are immaterial points. This statement related entirely to the issue of Murphy's connection with the fire. If appellee's counsel had conceded that Murphy burned the house, there was nothing in the record connecting appellee with Murphy on that issue. This conclusion also renders harmless the argument of appellee's counsel that the law presumed Murphy innocent until his guilt was legally established.

■ We give appellant's sixth proposition: "When the insured's policy sued upon excepts loss occasioned by explosion and confines the insurer's liability to loss by fire only, it is reversible error to render any judgment for the plaintiff when there is no issue submitted to the jury to negative loss by explosion, and this is particularly true where the evidence indicates that a large amount of gasoline was placed in the premises destroyed immediately before the fire, and when the insured's wife states that a gas heater may have been the cause of the fire."

In support of this proposition, appellant submits the following argument: "The contract of insurance sued upon was shown to contain exceptions to liability with reference to which, however, the plaintiff had pleaded a loss not falling within the scope of such exceptions. But the plaintiff did not prove the allegations which he made in this connection, nor did he prove that his loss did not result from one of the caus-

es, damage from which was an excepted liability. Of course the burden of proof was on the plaintiff to plead and prove that his loss did not result from any of the causes for which liability was excepted in the policy. This burden of proof the plaintiff utterly failed to sustain. Under the plaintiff's evidence, the fire was one of undetermined origin. Under plaintiff's evidence it might also reasonably be said to be true that it suggested a loss originating by reason of the presence of gas. Under evidence introduced by the defendant, it was shown that a large quantity of gasoline was placed in close proximity to a lighted gas appliance. It is a matter of common knowledge that gasoline is highly inflammable, and if subjected to heat or fire will explode. It is also a matter of common knowledge that a defective gas appliance may cause an explosion. * * * Merely by introducing evidence of a fire of unexplained origin, plaintiff did not make out his case against the insurance company, whose liability was not an all inclusive liability for loss by fire but a restricted liability. It is submitted that the evidence was inadequate to permit the rendition of any judgment against this appellant."

This argument is not pertinent to appellant's proposition. If it be conceded that the evidence raised the issue that the fire which destroyed appellee's property was caused "by explosion", appellant is not in position to complain now that that issue was not sent to the jury. The controlling issues summarized above were submitted and found by the jury in appellee's favor. Clearly the evidence raised the issue that the fire was not the result of an explosion. On that evidence, on authority of the Wichita Falls & O. R. Co. v. Pepper case, 134 Tex. 360, 135 S.W.2d 79, it was within the court's jurisdiction to find that issue as supplementing the verdict of the jury, and in support of the judgment it must be conclusively presumed that the court resolved the issue in favor of appellee.

What we have said above denies appellant's proposition that "the negative answers to special issues presenting the issue of incendiarism are against the overwhelming preponderance of the evidence."

From what we have said, it follows that the judgment of the lower court should be in all things affirmed, and it is accordingly so ordered.

Affirmed.